UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH SNAPCHAT ACCOUNT "nikolas_staycoo" STORED AT PREMISES CONTROLLED BY SNAP INC. (SNAPCHAT), HEADQUARTERED AT 2772 DONALD DOUGLAS LOOP NORTH, SANTA MONICA, CALIFORNIA 90405 | : : : : : : : : | Case No. 21-mj-115-01-AJ<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Kristi R. McPartlin, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent employed by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). As such, I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Section 2516 of Title 18. I have been employed as a Special Agent with ATF since August 2002. I am currently assigned to the Manchester, NH Field Office in the Boston Field Division. While training to become a Special Agent, I attended the Federal Law Enforcement Training Center (FLETC) in Glynco, GA and received training in practices and methods of illegal firearm possessors, firearm traffickers, and related federal criminal statutes. As a Special Agent I have conducted and/or participated in numerous investigations involving state and Federal firearm and controlled substance violations. I have interviewed multiple victims, witnesses, and suspects regarding various types of criminal activity. I have also served search warrants for various crimes and have

1

made criminal arrests for firearm and controlled substance violations. I have received training, both formal and on-the-job, regarding the federal firearms laws administered under Titles 18 and 26 of the United States Code.

2. I have undergone various law enforcement training, including firearms training, training on the execution of search and seizure warrants, training on investigative techniques, which include the collection and analysis of data obtained from search warrants. I have received specialized training in the investigation of firearms-related offenses. I have participated in investigations involving individuals who unlawfully possess firearms, of individuals illegally selling firearms, and of individuals distributing illegal drugs. I have written, obtained and coordinated the execution of search and arrest warrants pertaining to individuals involved in the illegal possession and distribution of firearms and drugs. I have also spoken with informants and subjects, as well as local, state and federal law enforcement officers, regarding the manner in which individuals obtain, store, manufacture, transport, and distribute their illegal firearms. I have received training, both formal and on-the-job, in the provisions of the federal firearms and drug laws administered under Titles 18 and 26 of the United States Code.

3. I am currently assigned to the ATF Manchester Field Office and I have been conducting an investigation into Nikolas LARONDE (DOB: xx/xx/1999) for suspected violations of 18 U.S.C. § 371 and 18 U.S.C. § 922 (a) (6) (Conspiracy to commit and make a false statement during the purchase of a firearm).

4. This affidavit is being submitted in support of an application for a search warrant for information associated with the following account (**nikolas_staycoo**) that is stored at premises controlled by Snap Inc. ("Snapchat" or "Provider"), a social networking company located at 2772

Donald Douglas Loop North, Santa Monica, CA 90405 as indicated below and as set forth in Attachment A hereto:

| Account Identifier | Provider |
|---|---|
| nikolas_staycoo | Snapchat |

5. This affidavit is made pursuant to Rule 41 and 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Snap, Inc. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

6. Based on the information set forth in this affidavit, I believe there is probable cause to believe that the **nikolas_staycoo** contains items that constitute instrumentalities, fruits, and evidence of the 18 U.S.C. § 371 and 18 U.S.C. § 922 (a) (6) (Conspiracy to commit and make a false statement during the purchase of a firearm).

7. The statements contained in this affidavit are based in part on information provided by other members of local, state, and federal law enforcement, my own investigation to include personal observations, documents and other investigative materials which I have reviewed, as well as my training and experience as a Special Agent with ATF. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the 18 U.S.C. § 371 and 18 U.S.C. § 922 (a) (6) (Conspiracy to commit and make a false statement during the purchase of a firearm) are located within the **nikolas_staycoo**, as described in Attachment B.

## JURISDICTION

8.      This Court has jurisdiction to issue the requested warrant for **nikolas_staycoo** pursuant to 18 U.S.C. §§ 2703(a), (b)(1)(A) and (c)(1)(A) because this Court is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND REGARDING SNAPCHAT

9.      Snap, Inc. is headquartered in Santa Monica, California, and owns and operates a free access social networking website of the same name that can be accessed at http://www.snapchat.com. Snapchat is an application for sending and receiving 'self-destructing' messages, pictures, and videos.

10.     A "snap" is a picture or video message taken and shared with other Snapchat users in real-time. The sender of a snap has the option of setting a timer for how long a snap can be viewed. Once a snap has been viewed it is deleted from the company's system and is no longer visible to the recipient. If there are snaps that have not been viewed, the content of the snap is still retained until the intended party has viewed the snap.

11.     Snapchat users can send text messages to others using the "Chat" feature. Once a user leaves the Chat screen, messages viewed by both the sender and the receiver will no longer be visible. The application notifies other users when they are online so they can begin messaging each other. In addition, Snapchat users can send pictures to other users by utilizing the camera on their device. Pictures can also be sent from the saved pictures in the photo gallery of the device.

12. "Our Stories" is a collection of user-submitted "Snaps" from different locations and events. A Snapchat user, with the location services of their device turned on, can contribute to a collection of snaps regarding the event. Users can also view "Our Stories" events if they are not actually present at the event by subscribing to the story. In addition to "Our Stories", a Snapchat user can keep a sort of photo/video diary using the "Story" feature. Each snap in a "Story" documents the user's experience. Based on the user's privacy settings, the photos and videos added to a "Story" can be viewed either by everyone on Snapchat or just the user's friend. Stories are visible to other users for up to 24 hours.

13. "Memories" is Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. A user can also edit and send Snaps and create Stories from these Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by Snapchat and may remain in Memories until deleted by the user.

14. Accessing a Snapchat account and "snaps" constitute "electronic communications" within the meaning of 18 U.S.C. § 3123. *See* 18 U.S.C. §§ 3127(1) and 2510(12).

15. In addition to photos, videos, "Snaps," "Memories" and stories, "Snapcash" is an online money transfer service offered by Snapchat. The actual business platform is run by "SquareUp", the distributor of a mobile credit card reader and application Square Register. Snapcash can be used to transfer money between Snapchat users using a linked, U.S. issued Visa or MasterCard debit card only; using credit cards is not permitted. Snapcash can only be sent to other users who have a linked debit card. Snapcash has a $250 weekly limit but can be upgraded to a $2,500 weekly limit. Users who upgrade have to provide their full name, date of birth, and Social Security number.

16.     While a Snapchat message may disappear, the record of who sent it and when still exists.  Snapchat records and retains information that is roughly analogous to the call detail records maintained by telecommunications companies.  This includes the date, time, sender, and recipient of a snap.  Additionally, Snapchat stores the number of messages exchanged, which users they communicate with the most, message status including if and when the message was opened, and whether the receiver used the native screen capture function of their device to take a picture of the snap before it disappeared.

17.     Snapchat asks users to provide basic contact and personal identifying information to include date of birth.  When a user creates an account they make a unique Snapchat username.  This username will be associated with the account until the account is deleted or deactivated.  The user can also select a display name for the account that the user's friends and others will see when the user sends a Snap or a chat.  Unlike the username, the display name can be changed at any time by the user without having to delete the current account.  An email address is required to register a Snapchat account and a new user must also provide a mobile phone number.  This phone number is verified during the registration process.  Snapchat sends an activation code which must be entered before proceeding with the registration step.  However, a user may elect to bypass entering a phone number so one may not always be present in the user's account. Snapchat also retains the account creation date.

18.     Snapchat stores device information such as the model, operating system, operating system version, mobile device phone number, and mobile network information of devices used in conjunction with the service.  They also collect unique device identifiers such as the Media Access Control (MAC) address and the International Mobile Equipment Identifier (IMEI) or Mobile Equipment Identifier (MEID) of devices used to access Snapchat.  In the event the Snapchat user's

application crashes, the company also collects a list of other installed applications on the device to detect any potential software conflicts.

19.     In some cases, application account users will communicate directly with the service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users.  Application providers typically retain records about such communications, including records of contacts between the user and the providers support services, as well as records of any actions taken by the provider or user as a result of the communications.  In addition, application providers often have records of the IP addresses used to register the account and the IP addresses associated with particular logins to the account.  Because every device that connects to the Internet must use an IP address, IP address information can help identify which computers or other devices were used to access the account.

20.     In my training and experience, evidence of who was using an application account may be found in address books, contact or buddy lists, email addresses in the account, and attachments to electronic messages, including pictures and files.

## PROBABLE CAUSE

21.     The United States, including ATF, is conducting a criminal investigation of Nikolas LARONDE regarding possible violations of 18 U.S.C. § 371 and 18 U.S.C. § 922 (a) (6) (Conspiracy to Commit and Make a False Statement during the Purchase of a Firearm).

22.     On or about January 4, 2021, ATF SA Kristi McPartlin interviewed Steven HINCHEY regarding three separate firearms transactions that HINCHEY made in the early months of 2020. HINCHEY could not initially remember how many firearms he had purchased and thought it to be approximately five (5) firearms. SA McPartlin knew that HINCHEY had purchased the following firearms:

- **January 7, 2020**
- Smith & Wesson, Model SW40VE, .40 caliber pistol bearing serial number DSD4112
- HS Produkt (IM Metal), Model XD Mod 2, .45 caliber pistol bearing serial number GM422602
- HS Produkt (IM Metal), Model XDS, .45 caliber pistol bearing serial # S3327767

- **January 21, 2020**
- Ruger, Model Security 9, 9mm pistol bearing serial # 381-91993

- **March 3, 2020**
- Keltec, CNC Industries Inc, Model PF-9, 9mm pistol bearing serial number SHH64
- Smith & Wesson, Model SD9VE, 9mm pistol bearing serial number FBH1610
- Smith & Wesson, Model SD9VE, 9mm pistol bearing serial # FXJ6376

- **April 2, 2020**
- Glock GMBH, Model 17 Gen 5, 9mm caliber pistol bearing serial number BGMK296

Two of the above listed firearms had been recovered in July 2020 in crimes in Boston and Somersworth, NH. The Boston firearm recovery occurred on July 7, 2020 and listed a time to crime of 126 days. The Somersworth firearm recovery occurred on July 10, 2020 and listed a time to crime of 99 days.

23. HINCHEY eventually admitted to purchasing most of the firearms (with the exception of the Glock) for a person that he knew as Nik. Nik used Nik-EBK (Snapchat handle) to communicate with HINCHEY. During the conversation with ATF SA McPartlin, HINCHEY provided SA McPartlin with two photos showing conversations about guns with Nik-EBK.







24.     HINCHEY stated to ATF SA McPartlin that Nik/ Nik EBK was from Boston and came up to New Hampshire to drive HINCHEY to Renaissance Firearms, a federal firearms licensee (FFL).

25.     The conversation shows HINCHEY telling Nik/Nik-EBK, "Just when we get there don't tell the workers you fucks with a gun tell me on the low so they don't think I'm buying it for you and don't say you from mass say you from nh". This conversation is dated January 7, 2020. This conversation is indicative of straw purchasing firearms for persons that are trying to avoid going through the legal channels.

26. HINCHEY then shows SA McPartlin an earlier part of the same conversation with Nik/Nik-EBK. The conversation is dated January 4, 2020. In the Snap Chat conversation, HINCHEY shows Nik/Nik-EBK a series of photos taken off of Renaissance Firearms website. Nik/Nik-EBK says "Yo they got Smith n Wesson sd40ve it could be a 9 or 380."

27. HINCHEY also provided SA McPartlin with photos taken with his cell phone of a person that HINCHEY said was Nik/Nik-EBK at Renaissance Firearms (posing with different guns).





28. On or about March 1, 2021, a second interview of HINCHEY resulted in more details regarding how HINCHEY came to know Nik/Nik-EBK. According to HINCHEY, he met Nik/Nik-EBK through Playstation. HINCHEY stated that he wanted some acceptance and wanted to feel like he belonged so when he found out that Nik/Nik-EBK was from the Boston area, he [HINCHEY] began showing Nik/Nik-EBK a pellet gun that looked like a real firearm and telling Nik/Nik-EBK that he [HINCHEY] was a drug dealer and had access to guns.

29.    According to HINCHEY, Nik/Nik-EBK then began to ask if HINCHEY could get guns. HINCHEY stated that he told Nik/Nik-EBK he could get guns because he was 21 and had an ID. HINCHY then stated that Nik/Nik-EBK offered to pay HINCHEY for purchasing guns. HINCHEY stated that he agreed because at the time, he needed money to help take care of his mother and also to feed his drug habit (which was Xanex and Percocet pills).

30.    HINCHEY stated that he went and purchased firearms for Nik/Nik-EBK approximately three separate times. HINCHEY said that he was promised money for the purchases, but he was never given any money. HINCHEY stated that he was too scared of Nik/Nik-EBK and his friends to confront them about not being paid.

31.    HINCHEY stated that his primary method of communication with Nik/Nik-EBK was through SnapChat. HINCHEY also stated that they spoke a lot through headsets while playing videogames on the Playstation.

32.    ATF SA McPartlin served a Grand Jury subpoena on Snapchat for the account that HINCHEY showed as Nik-EBK (handle), nikolas_staycoo (user name). The Grand Jury subpoena results came back for the account "nikolas_staycoo". The following information was revealed:  The account was created on January 2, 2013, The phone number linked to the account is            7002. The account was listed as "ACTIVE"

33.    An Accurint search on            7002 shows that the phone is listed to Nikolas Jordan LARONDE,                       Roxbury, MA.

34.    A criminal history search of Nikolas Jordan LARONDE shows that he was arrested in May 2020 in MA for possession of a firearm with no FID card and possession of a firearm with a defaced serial number.

35. I am seeking a search warrant on LARONDE's Snapchat account in order to obtain additional evidence that LARONDE has been in possession of firearms that were illegally acquired. Also, I would like to ascertain for whom LARONDE was acquiring the firearms for, if and when they were ever distributed to other persons in Massachusetts and how these transactions occurred, which may be provided contextually by the Snapchat conversations.

36. A preservation request was sent to Snapchat on April 2, 2021 for **nikolas_staycoo**. On April 5, 2021, Snapchat acknowledged receipt of the preservation request and stated that they would hold the requested information for 90 days.

## CONCLUSION

37. As set forth above, I have probable cause to believe and I do believe, that the items described in Attachment B, which constitute evidence, contraband, fruits, or instrumentalities of violations of 18 U.S.C. § 371 and 18 U.S.C. § 922 (a) (6), exist at the listed search locations.

## REQUEST FOR NON-DISCLOSURE AND SEALING ORDER

38. The existence and scope of this criminal case is not publicly known, the account holder, LARONDE, has not been notified and is unaware of potential charges. For that reason, premature public disclosure of this affidavit or the requested warrant could frustrate and seriously jeopardize this investigation by alerting LARONDE to the search of his account and permit him to delete, encrypt, or otherwise conceal such digital evidence before law enforcement has an opportunity to collect it from Snapchat. Accordingly, there is good cause to seal these documents and I request that the court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court.

39. There is also reason to believe that were Snapchat to notify LARONDE of the existence of the warrant, he would similarly be able to delete, encrypt, or otherwise conceal the

digital evidence contained in the account before law enforcement has an opportunity to collect it. Pursuant to 18 U.S.C. § 2705(b), I therefore respectfully request that the Court direct Snapchat not to notify any person of the existence of the warrant for a period of 180 days from issuance, subject to modification upon application to the Court, if necessary.

Date: May 7, 2021
/s/Kristi R. McPartlin
Kristi R. McPartlin
ATF Special Agent

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: May 7, 2021

Time: 3:05 PM, May 7, 2021

Andrea K. Johnstone
United States Magistrate Judge

## ATTACHMENT A

### PLACE TO BE SEARCHED

This warrant applies to information associated with the Snapchat Account **"nikolas_staycoo"** that is stored and maintained at the business premises controlled and operated by Snap, Inc. (Snapchat), a company headquartered at 2772 Donald Douglas Loop North, Santa Monica, CA 90405.

**ATTACHMENT B**

**DESCRIPTION OF ITEMS TO BE SEIZED**

I.    **Information to be disclosed by Snap, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of Snap, Inc. (Snapchat), including any messages, records, files, logs, or information that have been deleted but are still available to Snapchat, or have been preserved pursuant to a request made under 18 U.S. C. § 2703(f), Snapchat is required to disclose the following information to the government for the username listed in Attachment A for the **period of time from January 1, 2020 to present**:

(a) All subscriber information and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, passwords, security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers for the Target Account;

(b) Past and current display names;

(c) Target Account creation date and IP address;

(d) Timestamps and IP addresses of Target Account logins, logouts, sent messages, and all other activity;

(e) Logs of all previous Snaps, Stories, and Chats;

(f) All past and current usernames for the Target Account;

(g) All privacy and account settings;

(h) Payment information associated with the Target Account (including any credit card or bank account number);

(i) All information regarding the particular device or devices used to login or access the Target Account, including the IMEI, IMSI, MEID, ESN, Serial Number, Push Token, Phone Number, Android ID, Apple ID, etc.;

(j) All cookie information and additional accounts linked by cookies;

(k) A list of all of the accounts the Target Account follows and all accounts who are following the Target Account (i.e., the user's "following" list and "followers" list), as well as the Target Account friend lists (past and current friends);

(l) A list of all users that the Target Account has "unfollowed" or blocked;

(m) All records of searches performed by the Target Account, including all past searches saved or deleted by the account;

(n) All information about connections between the Target Account and third-party websites and applications;

(o) The content of all records, deleted or otherwise, of communications and messages made or received by the Target Account, including all private messages, chats, direct messages, chat history, video calling history, and pending and/or rejected "Friend" requests;

(p) The content of all Snaps, Stories, and Memories;

(q) All "My Eyes Only" content;

(r) All "check ins," other location information, Last Known locations, geotag, and GPS measurements;

(s) The types of service utilized by the user; and

(t) All records pertaining to communications between Snapchat and any person regarding the Target Account, including contacts with support services and records of actions taken.

**II. Prospective Information to be disclosed by Snap, Inc.**

To the extent that the information is within the possession, custody, or control of Snap, Inc. ("Snapchat"), Snapchat is required to disclose the following information to the government for the Target Account listed in Attachment A for a period of forty-five (45) days:

(a)  All physical location data and GPS data collected by Snapchat for the user of the account, including any data collected by Snapchat's location services via the user's mobile phone or other device, on a real-time or near-real time basis; and

(b)  All IP address information collected by Snapchat for the user of the account, including log-ins/log-outs and IP addresses associated with messages, posts, and all other activity on a real-time or near-real time basis.

### III. Information to be Seized by the Government

(a)  All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of 18 U.S.C. § 371 and 18 U.S.C. § 922 (a) (6) (Conspiracy to Commit and Make a False Statement during the Purchase of a Firearm).

(b)  All information described above in Section II. This data shall be made accessible by Snapchat to the Bureau of Alcohol, Tobacco, Firearms and Explosives, day or night, and emailed to Special Agent Kristi McPartlin at Kristi.Mcpartlin@atf.gov at regular intervals.